**Joseph and Anne FRANCIOSA, et al.**

v.

**UNITED STATES of America.**

**Civ. A. Nos. 26248, 29192, 29193, 32305–32307.**

United States District Court
E. D. Pennsylvania.

July 15, 1964.

Gus Milides, Michael V. Franciosa, Easton, Pa., for plaintiffs.

Drew J. T. O'Keefe, U. S. Atty., Sullivan Cistone, Asst. U. S. Atty., Philadelphia, Pa., Thomas F. Field, Dept. of Justice, Washington, D. C., for defendant.

GRIM, District Judge.

The plaintiff taxpayers obtained from the Lehigh Coal and Navigation Company the non-exclusive right to remove silt from the islands, bed and banks of the Lehigh river near Easton, Pennsylvania, and to extract coal therefrom. They removed the silt in accordance with the terms of the agreement, processed the coal from it, sold the coal and now contend that they are entitled to the percentage depletion allowed to coal mining companies by the Internal Revenue Code (26 U.S.C.A. §§ 611, 613). They have sued for alleged overpayment of income tax for the years 1956, 1957 and 1959. The case has been tried to the court without a jury and is presently before the court for the purpose of rendering findings of fact and conclusions of law.

There are no natural deposits of coal in the ground at or near the place where plaintiffs removed the coal-bearing silt. The coal which the plaintiffs extracted was carried in the Lehigh river from coal mines which were about fifty miles above the place of deposit; coal has been extracted from these mines since before the Civil War. At one time the Lehigh Coal and Navigation Company, the company from which plaintiff obtained its mining right, owned and operated coal mines about fifty miles upriver from Easton in the coal-mining area where the coal involved in this suit was originally mined. However, a number of other mines owned by other companies also existed and operated in this upriver area. It would appear that perhaps some of the silt and coal removed and processed by plaintiffs came from what were Lehigh Coal and Navigation Company mines, but it also appears that much of the silt and coal came from mines not owned or operated by the Lehigh Coal and Navigation Company. It is impossible to say how much, if any, of the coal in the silt near Easton came from Lehigh Coal and Navigation Company mines.

When a person extracts coal from a natural deposit on his land as part of his mining business he clearly is entitled to a depletion allowance. This is true whether he sells the coal immediately after the mining or stockpiles it or lets it accumulate as waste and residue and later extracts the coal from the waste or residue as part of his business. However, when a person who has never extracted coal from the natural deposit producing waste or residue merely acquires a right to work the waste or residue from a person who likewise has never extracted coal from the natural deposit and when the waste or residue in question is found some fifty miles from the natural deposit, on land not owned by the owner of the natural deposit, a different problem is created. This is the problem in the present case.

It is clear that prior to the 1954 Internal Revenue Code plaintiffs' claim for a depletion allowance would have been rejected. Kohinoor Coal Co. v. Comm'r., 171 F.2d 880 (3d Cir. 1948), cert. denied, 337 U.S. 924, 69 S.Ct. 1168, 93 L. Ed. 1732 (1949). Whether the Kohinoor decision has continuing validity under the 1954 Code need not be decided in this case since it is clear that on the facts of this case the 1954 Code does not give the plaintiff a right to a depletion allowance.

There were a number of decisions prior to 1954 involving the right to a depletion allowance on the part of an extractor of coal from waste or residue. Congress in the 1954 Code seemed to be aware of the problem and attempted to answer questions raised in these decisions by rewriting the section on depletion for mining to provide:

"§ 611. Allowance of deduction for depletion

"(a) * * * In the case of mines * * * there shall be allowed as a deduction * * * a reasonable allowance for depletion * * *. For purposes of this part, the term 'mines' includes deposits of waste or residue, the extraction of ores or minerals from which is treated as mining under section 613(c)."

Section 613(c) provides:

"(3). Extraction of the ores or minerals from the ground.—The term 'extraction of the ores or minerals from the ground' includes the extraction by mine owners or operators of ores or minerals from the waste or residue of prior mining. The preceding sentence shall not apply to any such extraction of the mineral or ore by a purchaser of such waste or residue or of the rights to extract ores or minerals therefrom."

■ By these provisions the 1954 Code simply restated what was quite uniformly the previous case law, namely, that mine owners are entitled to a depletion allowance, but that no depletion is allowed when a person merely acquires a right to extract coal from silt deposited on the ground, many miles from and many years after the mining operation which originally produced the silt, especially where the taxpayers cannot show that the land on which the coal-bearing silt is deposited is owned by the original miner whose operations produced this silt. Not only does Section 613(c) (3) of the 1954 Code demonstrate this, but also the legislative history of the 1954 Code clearly points it out. The House of Representatives committee report on Section 613 states:

"The term 'extraction of the ores or minerals from the ground' * * includes the extraction by mine owners or operators of ores or minerals from the waste or residue of *their* prior mining. Thus, a depletion allowance may be permitted when based on the extraction of minerals or ores from waste or residue of mining, such as a tailings dump or a culm bank, *if performed by the mine*

*owner or operator."* [1] (emphasis supplied)

The Senate committee report states:

"The House and your committee's bill extends percentage depletion * * * to mine owners for minerals recovered from the residue that had accumulated from *their* mine. The provision does not apply in the case of a purchaser of such waste or residue or to a purchaser of rights thereto." [2] (emphasis supplied)

■ It seems clear from the decisions prior to the 1954 Code, from the wording of the 1954 Code itself and its legislative history, that plaintiffs, who are not the original mine owners or operators, but merely the purchasers of the right to extract coal from silt deposited on the land of another person who likewise perhaps was not the original mine owner or operator, are not entitled to a depletion allowance.

■■ Plaintiffs contend that because the coal-bearing silt was in the ground for many years, and over the years a great amount of overburden had settled over it, their extraction of it made them miners of natural coal in place for depletion purposes. Depletion allowance is entirely a matter of legislative grace. Parsons v. Smith, 359 U.S. 215, 219, 79 S.Ct. 656, 3 L.Ed.2d 747 (1959). There is no legislation nor decision to support plaintiffs' contention. Clearly it must be rejected.

The statements herein shall constitute the findings of fact and conclusions of law in the case.

### ORDER

And now, this 14th day of July, 1964, the Clerk of the District Court is directed to enter judgment in favor of the United States and against the plaintiffs in this consolidated cause.

---

1. H.R.Rep. No. 1337, 83rd Cong.2d Sess. A185, A186 (1954), 3 U.S.Code, Cong. & Ad.News, p. 4325 (1954).

2. S.Rep. No. 1622, 83rd Cong.2d Sess. 79 (1954), 3 U.S.Code, Cong. & Ad.News p. 4712 (1954).